In the Matter of PHM CREDIT
CORPORATION, a Michigan
corporation, Debtor.

UNITED STATES TRUSTEE, Appellant,

v.

PHM CREDIT
CORPORATION, Appellee.

Civ. A. No. 89–72607.

United States District Court,
E.D. Michigan, S.D.

Jan. 26, 1990.

Tauras N. Ziedas, Office of U.S. Trustee, Detroit, Mich., for plaintiff.

Sheldon S. Toll, Honigman, Miller, Schwartz & Cohn, Detroit, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

FEIKENS, District Judge.

In this Chapter 11 bankruptcy case, the U.S. Trustee (Trustee) appeals Bankruptcy Judge Steven W. Rhodes' final order awarding attorney fees to the law firm of Honigman Miller Schwartz and Cohn (Honigman), counsel for the debtor in possession. In a Memorandum Opinion and Order filed April 18, 1989, 99 B.R. 762 I denied the Trustee's motion for leave to appeal Honigman's appointment on an interlocutory basis.

I also specifically left open the possibility that the Trustee could renew his objection on appeal from a final bankruptcy order. *Memorandum Opinion and Order,* at 765. The Trustee now brings such a final appeal. I held a hearing on this matter on January 5, 1990.

The debtor in possession, Pulte Home Mortgage Credit Corporation (PHMCC), is a limited purpose finance company, which issued nearly $100,000,000 in mortgage-backed bonds. Honigman has previously stated it had special expertise in this case because it helped develop this complex financing arrangement.

On March 23, 1989, I held a hearing on the Trustee's motion for leave to take an interlocutory appeal. At that hearing, Honigman stated that a reorganization plan paying all of the creditors in full was about to be confirmed. Honigman projected that the debtor would conclude its bankruptcy case by approximately June 1, 1989. The attorney for the creditors' committee estimated that substitution of attorneys would have cost the estate from one-half to one million dollars in legal fees and required at least ninety days to educate new counsel. *Brief of Appellee, PHM Credit Corp., Regarding Appeal of U.S. Trustee to Disqualify Honigman Miller Schwartz and Cohn as Counsel for PHM Credit Corp.,* filed March 20, 1989, at 13. Throughout this case, the Trustee has raised the only objection to Honigman's employment.

■ As a preliminary matter, Honigman argues the Trustee has no standing to bring this appeal, relying on *In re Revco, D.S., Inc.,* 99 B.R. 778 (N.D.Ohio 1989). I disagree with *Revco,* and find the Trustee has standing to proceed with this appeal. The court in *Revco* noted that the former Bankruptcy Act allowed a "person aggrieved" to appeal bankruptcy orders to the district courts. Although the current code omitted this language, some courts continue to require that appellants fulfill this requirement, in order to limit the number of appeals. *Id.* at 779. The court in *Revco* held that the U.S. Trustee had no standing to appeal because he had no pecuniary interest, and so was not a "person aggrieved."

■ Congress has given the U.S. Trustee standing to appear and be heard on any issue in *any* proceeding under Title 11:

The United States Trustee may raise and appear and be heard on any issue in any case or proceeding under this title but may not file a plan pursuant to section 1121(c) of this title.

11 U.S.C. § 307.

I will not superimpose the "person aggrieved" standard upon this broad statutory grant of standing. The pecuniary interest requirement may make sense when applied to private parties, since they will generally be involved in a bankruptcy case only if they have a financial interest. However, as the Trustee now argues, the U.S. Trustee participates in a bankruptcy case not to protect a financial interest, but to help enforce the bankruptcy laws. The pecuniary interest requirement does not apply to the U.S. Trustee's statutory role. Accordingly, I find that the Trustee in this case has standing to bring this appeal.

■ In addition to objecting to the Trustee's standing, Honigman argues the Trustee waived this claim by failing to object to the reasonableness of its fee award. The firm also contends the confirmation order precludes further adjudication of this issue.

The Trustee has not waived his right to bring this appeal. The Trustee repeatedly objected to Honigman's appointment, normally a prerequisite to any fee award. Further, my denial of leave to bring an interlocutory appeal was partly based on the fact that the Trustee could renew his objection on final appeal. I specifically stated in my Memorandum Opinion and Order denying leave to bring an interlocutory appeal that the Trustee could renew his objection on final appeal. *Memorandum Opinion and Order,* at 765.

■ Neither does the order confirming the bankruptcy plan preclude this appeal. Unlike the cases Honigman cites in support of its argument, this appeal is not a covert attack on a confirmed plan. As in *In re AOV Industries,* 792 F.2d 1140 (D.C.Cir. 1986), this appeal will not affect or collaterally attack PHMCC's confirmed plan. I find no merit in any of Honigman's three objections to the adjudication of this appeal.

■ The Trustee argues on appeal that Honigman should not have been appointed to represent PHMCC because the firm did not meet the statutory disinterest requirements. The bankruptcy code generally requires debtors to employ "disinterested" attorneys:

(a) Except as otherwise provided in this section, the trustee with the court's ap-

proval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, *and that are disinterested persons,* to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a) (emphasis added).

A "disinterested person" is one who:

(A) is not a creditor, an equity security holder, or an insider;

(D) is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee of the debtor or of an investment banker specified in subparagraph (B) or (C) of this paragraph; ...

11 U.S.C. § 101(13)(A) and (D).

Where, as here, the debtor is a corporation, an insider includes a director or officer of the debtor. 11 U.S.C. § 101(30)(B), § 101(30)(B)(i) and (B)(ii). An insider is also an affiliate, or insider of an affiliate as if such affiliate were the debtor. 11 U.S.C. § 101(30)(E).

The trustee claims Honigman never met this disinterest requirement, based on that firm's own disclosures. Honigman admitted that one of its partners, Mark Shaevsky, had served as the debtor's assistant secretary, but resigned within one year before the bankruptcy petition was filed. Shaevsky also acted as secretary for the debtor's ultimate parent, Pulte Home Mortgage Corporation (PHM). A second partner, Alan Schwartz, served on PHM's board of directors. Both Shaevsky and Schwartz held equity interests in PHM, which together equalled less than one percent of PHM's stock. Honigman also had a $10,000 prepetition claim against the debtor for non-bankruptcy legal services, which the firm waived. Honigman occasionally represented National Bank of Detroit, an indenture trustee for PHMCC's mortgage-backed bonds. Finally, the firm had represented parent corporations and other affiliates of PHMCC.

Notwithstanding these connections, Judge Rhodes authorized Honigman's appointment on several conditions. First, he ordered Shaevsky to resign as secretary of PHM. Second, Schwartz was ordered to recuse himself from any PHM board deliberations regarding PHMCC. Third, the Trustee would review PHM's board minutes to monitor compliance with this order. Fourth, Honigman was ordered to notify the court and parties of any further conflicts which arose. Finally, Judge Rhodes specifically reserved the authority to review and approve Honigman's fees. The Trustee now challenges his approval of Honigman's fees.

Judge Rhodes discussed his reasons for authorizing Honigman's fees and costs at a hearing held on August 21, 1989. *See Order Authorizing Fees and Costs Advanced to Honigman Miller Schwartz and Cohn,* filed August 24, 1989. At that hearing, he affirmed the curative measures he had previously ordered, stating that they adequately resolved the Trustee's concerns. *Excerpt of Fee Applications Hearings: Fee Request of Honigman, Miller, Schwartz & Cohn,* held August 21, 1989 and filed September 6, 1989, at 11. Judge Rhodes also said the Trustee had taken a hypertechnical position which ignored the case's fundamental economic realities. *Id.* In contrast, the judge had carefully balanced the interests of all concerned. *Id.*

The Trustee now alleges that Judge Rhodes abused his discretion by approving Honigman's appointment subject to his curative order, and by approving Honigman's fee award. I disagree. I find that Judge Rhodes had authority to adopt the curative measures in his order, and that those measures adequately met the concerns of the disinterest requirements. Therefore, I AFFIRM Judge Rhodes' *Order Authorizing Fees and Costs Advanced to Honigman Miller Schwartz and Cohn.*

■ Bankruptcy courts have statutory authority to take steps not specifically authorized by the bankruptcy laws, in order to carry out those laws. *In re Pirsig Farms, Inc.,* 46 B.R. 237 (D.C.Minn.1985). "The court may issue any order, process, or judgment that is necessary or appropriate

to carry out the provisions of this title." 11 U.S.C. § 105(a).

■ While Section 105(a) grants bankruptcy courts broad powers to fashion equitable remedies, *In re Ravenna Industries, Inc.*, 20 B.R. 886 (Bkrtcy.N.D.Ohio 1982), this power must be exercised within the confines of the bankruptcy code. *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 108 S.Ct. 963, 968–969, 99 L.Ed.2d 169 (1988). Section 105(a) does not give bankruptcy courts authority to contravene specific provisions of the code. *In re Pirsig Farms, id.*

■ The Trustee argues that Section 105(a) did not empower Judge Rhodes to appoint Honigman subject to his curative order because the bankruptcy code proscribes this appointment. *Brief of Appellant on Appeal of Final Order Awarding Fees*, filed November 3, 1989, at 28–29. I agree that before Judge Rhodes adopted his curative measures Honigman did not meet the disinterest requirement of Section 327(a). However, the Trustee has not cited, nor has my research revealed, a general statutory proscription of the curative steps Judge Rhodes took in order to meet the Trustee's concerns. Therefore, I find § 105(a) gave Judge Rhodes authority to enter this order.

■ The Trustee does claim that 11 U.S.C. § 101(30)(B) and (E) specifically exclude resignation of officers and directors of the debtor and its affiliates as a way to meet the disinterest requirement. The Trustee argues that such resignations do not satisfy the disinterest requirement unless the resignation occurred two years before the bankruptcy petition was filed. *Brief of Appellant on Appeal of Final Order Awarding Fees, supra*, at 21. I do not read § 101(30) to specifically disallow Judge Rhodes' order that Shaevsky resign as secretary of the debtor's parent corporation, as the Trustee argues.

Section 101(13)(A) defines "disinterested persons" as, *inter alia*, "insiders." An "insider" is a director or officer of the debtor corporation. 11 U.S.C. § 101(30)(B)(i) and (B)(ii). An "insider" is

also an affiliate of the debtor, or insider of an affiliate as if such affiliate were the debtor. 11 U.S.C. § 101(30)(E).

Section 101(13)(D) gives a separate definition of "disinterested person" as one who is not and was not within two years before the date of the filing of the petition a director or officer of the *debtor*. 11 U.S.C. § 101(13)(D). The two-year back rule contained in this subsection applies to a subclass of insiders, the debtor's officers and directors. This rule does not apply to other insiders, such as officers and directors of an affiliate. Since Shaevsky was the secretary of the debtor's parent corporation, § 101(13)(D) does not specifically preclude his resignation, even though it occurred within two years before the petition was filed.

The bankruptcy code neither specifically allows nor prohibits Judge Rhodes' order ameliorating Honigman's failure to meet the disinterest requirements. Therefore, I find that given the specific facts in this case, Judge Rhodes did not abuse his discretion in adopting this curative order, or in later awarding Honigman fees and costs. *See* 11 U.S.C. § 105(a). Rather than constituting an abuse of discretion, Judge Rhodes' orders in this case comport with the most fundamental guide to statutory interpretation—common sense. *First United Methodist Church v. U.S. Gypsum Co.*, 882 F.2d 862, 869 (4th Cir.1989).

■ Statutes should be interpreted to avoid unreasonable results whenever possible. *American Tobacco Co. v. Patterson*, 456 U.S. 63, 71, 102 S.Ct. 1534, 1538, 71 L.Ed.2d 748 (1981). When interpreting statutes, courts of appeals are required to give a practical interpretation which will not produce an absurd result. *U.S. v. Cruz*, 698 F.2d 1148, 1151 (11th Cir.1983) (citation omitted). These considerations are particularly relevant in the present bankruptcy context, where:

> Essential to any analysis of the meaning of and policy behind any section of the bankruptcy code is the recognition that a bankruptcy court is a court of equity. Bankruptcy courts do not read statutory words with a computer's ease, but oper-

ate under the overriding consideration that equitable principles govern the exercise of bankruptcy jurisdiction.

*In re Briggs Transportation Co.,* 780 F.2d 1339, 1343 (8th Cir.1985) (citations omitted).

I agree with Judge Rhodes' statement that the Trustee has taken a hypertechnical position, ignoring the fundamental economic realities of the case. The Trustee stated at the January 5, 1990 hearing that nothing on the record indicates Honigman committed any actual impropriety, nor has the Trustee alleged any harm occurred to the estate's creditors. In fact, the estate did not even have to pay Honigman's fee in this case. An entity other than the debtor, Pulte Financial Services, Inc., paid the fee. *Excerpt of Fee Application Hearings: Fee Request of Honigman Miller Schwartz and Cohn,* held August 21, 1989 and filed September 6, 1989, at 2.

Not only has the Trustee failed to show any actual harm or impropriety, but the parties themselves estimated that bringing in new attorneys would have cost the estate from one-half to one million dollars and required ninety days. *Brief of Appellee,* filed March 20, 1989, *supra.* Honigman's uncontroverted assertion that its role in developing the mortgage-backed bonds gave it special expertise in this complex case supports this estimate. The parties did not object to Honigman's appointment.

This delay and extra expense would have been added to a case which was otherwise quickly and efficiently resolved. Judge Rhodes issued his curative order on December 20, 1988. At the hearing I held on March 23, 1989, Honigman stated that a plan paying all creditors in full was about to be adopted.

Finally, the Trustee argues Judge Rhodes abused his discretion in ordering the Trustee to monitor Schwartz's recusal from PHM board discussions concerning the debtor. The appellant claims Judge Rhodes impermissibly ordered the Trustee to act beyond the scope of the Trustee's statutory authority by monitoring PHM's board minutes, since PHM was not in bankruptcy and so not under the bankruptcy court's jurisdiction.

I do not find Judge Rhodes abused his discretion in ordering the Trustee to monitor Schwartz's recusal. Since the Trustee made the only objection to Honigman's appointment, it seems he would have been interested in ensuring no actual impropriety occurred at the board meetings.

Importantly, the Trustee complains that his duties and responsibilities are enumerated in 28 U.S.C. § 586, and that these all pertain to matters in cases under Title 11 of the United States Code. The appellant asserts Judge Rhodes' order is not contemplated by the bankruptcy code, rules, or by Title 28 of the United States Code, since PHM was not in bankruptcy.

As with his curative order generally, no statutory provision specifically prohibits Judge Rhodes from appointing the Trustee to monitor the board minutes of the debtor's parent corporation. In fact, 11 U.S.C. § 101(30)(D) treats such affiliates or parent corporations as if they were the debtor in defining insiders. I find that under 11 U.S.C. § 105(a), Judge Rhodes had authority to order the Trustee to monitor Schwartz's recusal, and that Judge Rhodes did not abuse his discretion in so ordering.

I emphasize that I do not now sanction such curative orders in all cases. However, the economic realities of this case made Honigman's appointment important to the case's resolution, no actual impropriety or harm was alleged or shown, and the bankruptcy judge issued an order carefully balancing the various interests, including the Trustee's interest. I only hold that in these specific circumstances, Judge Rhodes did not abuse his discretion in implementing a pragmatic solution to the Trustee's technical objections. Since Honigman's appointment did not constitute an abuse of discretion, I also AFFIRM Judge Rhodes' *Order Authorizing Fees and Costs Advanced to Honigman Miller Schwartz and Cohn,* entered on August 24, 1989.

IT IS SO ORDERED.