**In re M–H GROUP, INC., Debtor.**

**Bankruptcy No. 91–32732.**

United States Bankruptcy Court, N.D. Ohio, W.D.

Aug. 8, 1991.

Ruth Meacham, Toledo, Ohio, for debtor.

Michael Messenger, Toledo, Ohio, for Fifth Third Bank of Toledo, N.A.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court after Hearing on the United States Trustee's Motion for Relief from Order Appointing the law firm of Marshall & Melhorn as counsel for the Debtor. At the Hearing, the parties were afforded the opportunity to present the arguments and evidence they wished the Court to consider in reaching its decision. The Court has reviewed the relevant case law, the arguments and evidence presented, as well as the entire record in this case. Based upon that review, and for the following reasons, the Court finds that the law firm of Marshall & Melhorn should be disqualified from serving as counsel for the Debtors.

## FACTS

On July 12, 1991, M–H Group, Inc. (hereinafter "M–H"), and its subsidiaries, Meilink Industries, Inc. (hereinafter "Meilink") and Hercules Stamping Co. (hereinafter "Hercules") (hereinafter collectively referred to as "Debtors"), filed for Bankruptcy under Chapter 11 of the Bankruptcy Code.

M–H is a holding company and the sole shareholder of both Meilink and Hercules. Meilink manufactures insulated files and safes. Hercules manufactures metal stamped components for use with Meilink and for use in the automotive, appliance, and furniture industries. M–H owes Fifth Third Bank of Toledo, N.A. (hereinafter "Fifth Third") Three Million Three Hundred Thousand Dollars ($3,300,000.00). M–H guaranteed this loan and secured it with the assets of Meilink and Hercules.

Along with the petition, applications for the employment of the law firm of Marshall & Melhorn (hereinafter "M & M") as attorney for the Debtors were filed. These applications contained the following disclosures:

(a) [M & M] has represented [Fifth Third] which is a secured creditor of [the Debtors]. Such representation involves primarily transactional matters with the exception of one securities offering in 1988. [M & M] has never represented Fifth Third in any matter or transaction involving [the Debtors] of its related subsidiaries.

(b) [M & M] represents [the Debtors'] affiliates which have filed related Chapter 11 cases.

(c) One of the partners of [M & M], Reeve Kelsey, previously served as secretary of [the Debtors], whose primary responsibilities consisted of maintaining corporate records. Mr. Kelsey received no compensation for his services and resigned effective July 10, 1991.

(d) [M & M] has represented some of the shareholders who are also Directors of [the Debtors]. None of the shareholders are creditors of [the Debtors] either directly or indirectly as personal guarantors of corporate debt.

Affidavit of Ruth A. Meacham signed July 12, 1991.

On July 15, 1991, during a Hearing on the Debtor's Motion for Use of Cash Collateral, the Court granted the Debtor's Application to employ M & M. At this Hearing, M & M informed the Court that a group of individuals [hereinafter "lending group"] would be lending the Debtors money on a revolving line of credit. These individuals included some officers of the Debtors in addition to persons not affiliated with the Debtors.

On July 23, 1991, the United States Trustee [hereinafter "UST"] filed the instant Motion. M & M filed a response. The Court set the matter for Hearing, at which the following facts were revealed:

Reeve Kelsey, partner of M & M, testified that he was the corporate secretary for M–H, Meilink, and Hercules. He testified that he served as corporate secretary for Meilink and Hercules until about eight (8) or nine (9) months ago. He testified that he served as corporate secretary for M–H until the day prior to Bankruptcy, at which time he resigned. He further testi-

fied that he was lead counsel in M & M for the Debtors prior to Bankruptcy. Mr. Kelsey testified that M & M represents the Chief Executive Office and some of the directors of the Debtors individually. Mr. Kelsey also testified that in the past, he had performed work for Fifth Third. Furthermore, Mr. Kelsey testified that at the time of filing, M & M represented some of the individuals in the lending group, though none asked for his advice on the revolving loan.

James B. Silk, general counsel for Fifth Third, testified the he had retained M & M to do work for Fifth Third. Mr. Silk testified that Fifth Third had expended over Forty Thousand Dollars ($40,000.00) in legal expenses to M & M since January 1, 1991. He further testified that M & M would be paid additional fees for their role as legal counsel in a lender liability action. He testified that he had dealings with Richard Kerger, Lori Decker, and Donald Frazer, all attorneys at M & M who would be working with the Debtors. He did not indicate if he had dealings with Ruth Meacham or Mark Rose, also attorneys at M & M authorized to work on behalf of the Debtors. Mr. Silk further testified that he had been apprised of M & M's intentions to represent the Debtor and that "it didn't bother [him] that [M & M] would represent [the Debtors] and that [his] thoughts were that [M & M] had not represented Fifth Third in any type of a matter that would give [M & M] an advantage in representing M–H against us." Transcript of proceedings before Honorable Richard L. Speer, United States Bankruptcy Judge, July 31, 1991, p. 40.

At the Hearing, Dean Wyman, representing the UST, stated that the Twenty Thousand Dollar ($20,000.00) retainer paid by the Debtors to M & M at the inception of the case should be returned to the Debtors. Mr. Wyman argued that his office could not determine if the check had been paid pre-petition. He indicated that if the check had not been paid pre-petition, that such post-petition payment was unauthorized. He indicated further that should M & M be allowed to continue to serve as counsel for

the Debtors, M & M would have to file a Motion to receive a post-petition retainer. Mr. Wyman contended that if M & M should be disqualified, they should be denied any compensation as they were not disinterested, even under a quantum meruit theory.

Ruth Meacham, on behalf of M & M and lead counsel for the Debtors, argued that M & M should remain employed as counsel for the Debtors. She contended that due to the close relationship between M–H, Meilink, and Hercules, due to the on-going labor contract negotiations, and due to the progress M & M had made in making the Debtors a successful Chapter 11, that M & M should continued to represent the Debtors. She contended that if the Court recognized an inexcusable conflict, the Court could take curative measures. She contended that removal of M & M would cause unreasonable consequences for the Debtors. As to the receipt of the retainer, she presented the Court with a copy of a deposit slip reflecting a deposit into the firm's account for Twenty Thousand Dollars ($20,000.00) on July 11, 1991, one day prior to Bankruptcy.

## LAW

There are two issues before the Court: (1) Whether M & M has complied with the disinterestedness requirement of the Bankruptcy Code; and (2) Whether they should be compensated for their services rendered to date. The Court believes that M & M is not a disinterested party for Bankruptcy purposes and therefore must be disqualified from serving as counsel for the Debtors.

The Bankruptcy Code requires debtors in possession to employ disinterested professionals to assist them in their cases. The Code states that

Except as otherwise provided in this section, [a debtor in possession] with the court's approval, may employ one or more attorneys ... or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent to assist the [debtor in possession] in carry-

ing out the [debtor in possession's] duties under this title.

11 U.S.C. § 327(a) and § 1107(a). A "disinterested person" is one who

(A) is not a creditor, an equity security holder, or an insider;

(D) is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee of the debtor ...;

(E) does not have an interest materially adverse to the interest of the estate or of any class of creditors ... by reason of any direct or indirect relationship to, connection with, or interest in, the debtor....

11 U.S.C. § 101(13)(A),(D), and (E). An "insider" for corporate debtors includes directors or officers of the debtor. 11 U.S.C. § 101(30)(B).

The UST claims that M & M never met the disinterestedness requirement, based upon M & M's own disclosures. M & M admitted that one of its partners served as secretary for all three corporate Debtors, but resigned from two of them within one year, and in M–H's case one day, before the Bankruptcy petition was filed. M & M also had a Two Thousand Four Hundred Eighteen Dollars and Forty-two Cent ($2,418.42) pre-petition claim against the Debtor for non-Bankruptcy legal services, which the firm waived. At the time of petition, M & M represented Fifth Third in major litigation in a lender liability action unrelated to the Debtors. M & M also represented some shareholders and officers of the Debtors individually at the time the petition was filed. M & M represented M–H, Meilink, and Hercules which were, and still are, creditors of each other. Finally, the firm represented some of the individuals who comprised the lending group. Clearly, the Court cannot authorize the application of M & M's appointment based upon these connections under Section 327. This ruling in no way reflects upon the abilities of M & M to provide competent legal counseling as the Court does not question M & M's abilities. As Bankruptcy Courts are courts of equity, however, the issue remains as to whether the Court can

authorize M & M's application under the Court's equitable powers.

■ Section 105 of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). However, "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code." *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 206, 108 S.Ct. 963, 968–69, 99 L.Ed.2d 169 (1988). *See also Childress v. Middleton Arms,* 934 F.2d 723, 725 (6th Cir.1991) ("The equitable powers of Section 105(a) may only be used in furtherance of the goals of the Code.").

M & M asserted that the Debtors' best interests would be served if they were allowed to remain as counsel. The Court, even under its equitable powers, cannot allow M & M to continue to represent the Debtor. Section 327 clearly and definitively provides that all professionals must meet the disinterestedness requirement of the Code. The Sixth Circuit has held that in light of Section 327(a), "[bankruptcy] courts cannot approve the employment of a person who is not disinterested even if the person does not have an adverse interest." because "bankruptcy courts 'cannot use equitable principles to disregard unambiguous statutory language.'" *Childress,* at 725 (*quoting In re C–L Cartage Co. Inc.,* 899 F.2d 1490, 1494 (6th Cir.1990). Therefore, the Court must vacate its order approving M & M as Debtors' attorneys because M & M didn't meet the statutory requirements.

In M & M's Response to the UTS's Motion, M & M cited *United States Trustee v. PHM Credit Corp.,* 110 B.R. 284 (U.S.C.Ct. E.D.Mich., S.D.1990), as support for their request that the Court take curative steps to permit their continued representation of the Debtors. This Court has reviewed that case, in addition to all the cases cited by both M & M and the UST, and notes that the *PHM* decision is very narrow in application. The *PHM* court allowed the firm to continue to represent the debtor because "the economic realities of the case made [the firm's] appointment important to the case's resolution [and] no actual impropriety or harm was alleged or shown...." *PHM,* at 209. The case at bar differs substantially from *PHM.*

In the case at bar, the UST alleged that the creditors would be harmed by the Debtors employing M & M because M & M represented shareholders, as well as the chief executive officer of M–H, which creates either an actual adverse interest or a strong possibility of an adverse interest. Additionally, the UST alleged that since Meilink owes Hercules over Four Hundred Thousand Dollars ($400,000.00), an actual adverse interest appears if one counsel represents both entities. At the Hearing, the Court expressed its concern over the possibility of one of the Debtors having to sue the other to recover a claim and the grave impact that would have on the Debtors' counsel. Furthermore, the UST alleged that since M & M has represented a creditor owed Three Million Three Hundred Thousand Dollars ($3,300,000.00) by the Debtors, and that since M & M represented some the individuals in the lending group, albeit for non-related services in both instances, an appearance of impropriety emerges. This Court cannot allow M & M to continue in its capacity as counsel for the Debtors due to the possibility of harm and the appearances of impropriety. The integrity of the Bankruptcy system dictates such a result. These conflicts of interest, actual and apparent, may be construed as prejudicial to the successful completion of the Chapter 11 Plan in the best interest of other creditors and interested parties.

A primary caution in Bankruptcy Courts is eternal vigilance to avoid the harmful influences resulting from conflicts of interest. All conflicts of interest are not void, but are voidable as the facts in a particular case may warrant. For instance, this Court is fully aware of Section 1107(b) of the Bankruptcy Code which makes some conflicts voidable. That Section provides that "(b) Notwithstanding section 327(a) of this title, a person is not disqualified for employment under section 327 of this title

by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." 11 U.S.C. § 1107(b). *See also,* 11 U.S.C. § 327(c) (previous employment by a creditor does not disqualify a person, unless another creditor or the United States Trustee raises the issue and an actual conflict of interest exists). This Court, however, does not believe the allowances in Section 1107(b) make voidable M & M's conflicts because there are more relationships which exist here than just former employment. These relationships have been fully explored in the preceding paragraphs and, consequently, will not be reiterated here.

■ As to compensation for services rendered thus far, Bankruptcy Courts must authorize or approve employment of professionals who are to be paid from estate assets. *See* 11 U.S.C. § 328. The UST contends that M & M should return the entire Twenty Thousand Dollar ($20,000.00) retainer. The UST further contends that M & M should not be entitled to any compensation as M & M knew of the conflicts and should not have undertaken to represent the Debtors. The Court does not agree entirely with the UST's position. Although M & M cannot represent the Debtors, M & M should be compensated under a quantum meruit theory.

As stated previously, Bankruptcy Courts are courts of equity and as such can enter equitable orders of relief. Quantum Meruit recoveries are reimbursement for an unjust enrichment which results from the failure to make restitution for benefits received. The Court believes that there is unjust enrichment in allowing the Debtors to recover the entire Twenty Thousand Dollar ($20,000.00) retainer. If that were the case, the Debtor would profit in that it would receive legal services for free. The record does not reflect any reprehensible conduct as to justify denial of all fees for the professional services rendered. But rather, the record suggests that M & M has supplied substantial, professional, and valuable legal services to the Debtors. Section 328(c) of the Bankruptcy Code does not interfere with the Bankruptcy Court's inherent judicial discretion in the area of fee allowances.

(c) Except as provided in section 327(c), 327(e), or 1107(b) of this title, the court *may deny* allowance of compensation for services and reimbursement of expenses of a professional person employed under section 327 or 1103 of this title if, at any time during such professional person's employment ... such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed.

11 U.S.C. § 328(c) (emphasis added). The Court acknowledges that such discretion should always be exercised with extreme caution because of the harshness of depriving reputable counsel of their very life blood. Based upon the record, the Court cannot exercise its discretion and make a determination as to proper compensation for M & M for their services to date. Accordingly, M & M should submit an itemization of their services rendered on behalf of the Debtors to the date of this decision.

■ As to the UST's position surrounding the timeliness of the retainer, the Court is aware of the cases to which the UST cited during the Hearing. However, the Court is diametrically opposed to the brick wall stance taken by the UST as being applied in all cases, regardless of the circumstances of each case. M & M represented to the Court that the retainer was received and deposited the day before filing. Based upon these facts, the Court will not split hairs over the timing of the payment of the check. M & M acted diligently in depositing the check and the UST could not provide evidence that the check was not paid expeditiously.

In reaching these conclusions, the Court has considered all the evidence and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

Accordingly, it is

ORDERED that the Order approving the appointment of the law firm of Marshall &

Melhorn as attorneys for the Debtors be, and is hereby, Vacated.

It is FURTHER ORDERED that the Debtors retain new counsel and file an application for its appointment with Twenty-one Days (21) of the date of this Order.

It is FURTHER ORDERED that within Seven (7) days of the date of this Order, the law firm of Marshall & Melhorn file an Application for Fees and Expenses for services rendered to the Debtors from the inception of the case to the date of this Order.