UNITED STATES TRUSTEE, Appellant,

v.

PRICE WATERHOUSE; Sharon Steel Corporation; Sharon Specialty Steel Inc.; Monessen Inc.

No. 93–3337.

United States Court of Appeals, Third Circuit.

Argued Jan. 12, 1994.

Decided March 16, 1994.

---

Frank W. Hunger, Asst. Atty. Gen., William Kanter, and Robert M. Loeb (argued), Attys., Appellate Staff, U.S. Dept. of Justice Civ. Div., and Martha L. Davis, Gen. Counsel, and Anastasia M. Petrou, Atty., Executive Office for U.S. Trustees, Dept. of Justice, Washington, DC, for appellant.

Herbert P. Minkel, Jr. (argued), Fried, Frank, Harris, Shriver & Jacobson, New York City, for appellees.

Before: STAPLETON, COWEN, and ALITO, Circuit Judges.

## OPINION OF THE COURT

ALITO, Circuit Judge:

This is an appeal from a district court order affirming a bankruptcy court order that approved the employment by several debtors in possession of an accounting firm that had a claim against their estates for prepetition services. Applying the plain language of 11 U.S.C. § 327(a) and related provisions of the Bankruptcy Code, we hold that the district court and the bankruptcy court erred, and we therefore reverse.

### I.

In November 1992, Sharon Steel Corporation, Sharon Specialty Steel, Inc., and Monessen, Inc. filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. By order of the bankruptcy court, these cases are being jointly administered, and the debtors are continuing to operate their businesses as debtors in possession.

Shortly after filing their petitions, the debtors filed applications to employ Price Waterhouse as their accountant and financial advisor. The debtors selected Price Waterhouse in part because it had previously provided them with accounting, auditing, and consulting services and had thus developed expertise regarding their financial affairs and needs.

According to the affidavit of a Price Waterhouse partner, the debtors, as of December 1992, owed Price Waterhouse $875,894.15 for prepetition services. The affidavit stated, however, that Price Waterhouse would not participate as an unsecured creditor in the debtors' Chapter 11 cases and would not vote

its claim in connection with the confirmation of any plan of reorganization. In late December 1992, the bankruptcy court granted interim approval of the retention of Price Waterhouse retroactive to the applications' filing dates, but the court provided that it would reconsider Price Waterhouse's continued employment at a hearing to be held a short time later.

Although no creditor objected to Price Waterhouse's continued retention, the United States Trustee filed an objection.[1] The United States Trustee contended that under 11 U.S.C. § 327(a) the debtors could not employ professionals who were not "disinterested" and that Price Waterhouse was not "disinterested" under the definition set out in 11 U.S.C. § 101(14) because it was a creditor. The bankruptcy court nevertheless authorized the continued employment of Price Waterhouse. The bankruptcy court acknowledged that "Price Waterhouse is one of the twenty largest creditors of the estate," and that therefore, if the relevant provisions of the Bankruptcy Code were "read and interpreted literally as suggested by the United States Trustee, Price Waterhouse would be barred as creditors are per se 'interested.'" *In re Sharon Steel Corp.*, 152 B.R. 447, 449 (Bankr.W.D.Pa.1993), *aff'd*, 154 B.R. 53 (W.D.Pa.1993). The bankruptcy court also stated that "[t]he United States Trustee's position finds support in numerous cases." *Id.* However, the court added:

> While some courts do interpret § 327(a) literally, we believe that a more practical view is required which considers the economic realities of the case and the overriding purposes of Chapter 11 of the Bankruptcy Code.

*Id.* Observing that "Price Waterhouse is most familiar with the Debtor's accounting systems and operations," the court also stated:

> Even if the Debtor had the capability of engaging an accounting firm to replace Price Waterhouse, it would be extraordinarily expensive and take a substantial

length of time to become familiar with the Debtor's needs.

> The debtor has no cash to pay a retainer to a new firm and it is unlikely that a new firm could be engaged without a retainer given the serious possibility that this estate will have no funds with which to pay administrative expenses. Further, the Debtor is under tight time constraints to complete its work and present it to the Court.

> The economic realities of this case make Price Waterhouse's employment imperative. No harm to any other party has been alleged or can be shown. Price Waterhouse has agreed not to participate in the Debtor's Chapter 11 case nor vote its unsecured claim. Clearly, the failure to appoint Price Waterhouse would jeopardize any hope the Debtor has of presenting a business plan demonstrating that the Debtor has any chance at reorganization.

*Id.* at 450.

The United States Trustee appealed to the district court, which affirmed the decision of the bankruptcy court. Echoing the bankruptcy court, the district court wrote:

> It is uncontested that Price Waterhouse is a creditor of the estate. Therefore, if read and interpreted literally, as argued by the United States Trustee, Price Waterhouse would be barred as creditor as it is *per se* "interested."

*United States Trustee v. Price Waterhouse (In re Sharon Steel Corp.)*, 154 B.R. 53, 54 (W.D.Pa.1993). However, the district court interpreted our decision in *In re BH & P, Inc.*, 949 F.2d 1300 (1991), as adopting "a flexible approach to disqualification of professional employees." *Price Waterhouse*, 154 B.R. at 54. While recognizing that *In re BH & P* concerned disqualification based on a professional's alleged "actual conflict of interest" under Section 327(c), rather than a professional's status as a non-"disinterested" person under Section 327(a), the court stated

---

1. When the United States Trustee objected to the appointment of Price Waterhouse, the attorney representing the unsecured creditors committee not only consented to the appointment, but actually requested that Price Waterhouse be retained, arguing that the conflict of interest was insignificant and that without the employment of Price Waterhouse the unsecured creditors would realize little or no payment on their claims.

that it could "find no reason why" the same approach should not be utilized in both situations. *Id.* at 55. The United States Trustee then took this appeal.

## II.

■ Before oral argument, we asked the parties to brief the question whether the United States Trustee has standing to maintain this appeal. Having considered the parties' responses, we are satisfied that the United States Trustee does have standing. Under 11 U.S.C. § 307 (emphasis added), "[t]he United States trustee may raise and *may appear and be heard* on any issue in any case or proceeding under this title but may not file a plan pursuant to § 1121(c) of this title." The House Report explained:

The U.S. Trustee is given *standing* to raise, appear, and be heard on any issue in any case or proceeding under Title 11, U.S.Code—except that the U.S. Trustee may not file a plan in a Chapter 11 case. In this manner, the *U.S. Trustee is given the same right to be heard as a party in interest,* but retains the discretion to decide when a matter of concern to the proper administration of the bankruptcy laws should be raised.

H.R.Rep. No. 764, 99th Cong., 2d Sess. 27, *reprinted in* 1986 U.S.Code Cong. & Admin.News 5227, 5240 (emphasis added). Accordingly, we are convinced that the United States Trustee has standing here. *See In re Clark,* 927 F.2d 793, 796 (4th Cir.1991); *In re Revco D.S., Inc.,* 898 F.2d 498, 499–500 (6th Cir.1990).

## III.

■ The merits of this appeal are straightforward and do not require extended discussion. As the Supreme Court and our court have repeated many times in recent years, when statutory language is clear and unambiguous it ordinarily must be followed. *See, e.g., Rake v. Wade,* — U.S. —, —, 113 S.Ct. 2187, 2191, 124 L.Ed.2d 424 (1993); *Patterson v. Shumate,* — U.S. —, —– —, 112 S.Ct. 2242, 2246–47, 119 L.Ed.2d 519 (1992); *Prisco v. Talty,* 993 F.2d 21, 24 (3d Cir.1993); *Virgin Islands v. Knight,* 989 F.2d 619, 633 (3d Cir.), *cert. denied,* — U.S.

—, 114 S.Ct. 556, 126 L.Ed.2d 457 (1993). Here, the relevant statutory provisions are clear and unambiguous.

■ Under 11 U.S.C. § 1107(a), the power of a debtor in possession to employ accountants or other professionals is the same as that of a trustee. *See, e.g., In re T & D Tool, Inc.,* 125 B.R. 116, 119 (E.D.Pa. 1991); *In re Vanderbilt Assoc., Ltd.,* 117 B.R. 678, 680 (D.Utah 1990). The extent of this power is specified by Section 327(a), which states (emphasis added):

Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, *and that are disinterested persons,* to represent or assist the trustee in carrying out the trustee's duties under this title.

Consequently, the debtors in this case could not employ accountants or other professional who were not "disinterested."

■ Under Section 101(14), a "disinterested person" must be a person who "is not a creditor." The Code defines the term "creditor" as meaning any "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor," 11 U.S.C. § 101(10)(A), and the commencement of each of the debtor's chapter 11 cases constituted an order for relief. *See* 11 U.S.C. § 301. These provisions, taken together, unambiguously forbid a debtor in possession from retaining a prepetition creditor to assist it in the execution of its Title 11 duties. *See, e.g., In re Eagle–Picher Indus., Inc.,* 999 F.2d 969, 972 (6th Cir.1993); *In re Middleton Arms, Ltd. Partnership,* 934 F.2d 723, 725 (6th Cir.1991); *In re Pierce,* 809 F.2d 1356, 1362–63 (8th Cir.1987); *In re Hub Business Forms, Inc.,* 146 B.R. 315, 320 (Bankr.D.Mass.1992); *In re Patterson,* 53 B.R. 366, 371–73 (Bankr.D.Neb.1985).

■ Neither the bankruptcy court nor the district court made any attempt to reconcile its holding with the plain language of these statutory provisions. Nor did they purport to find any support for their holdings in other provisions of the Code or its legislative

history. The appellees, however, argue that Section 327(a) is rendered ambiguous by 11 U.S.C. § 328(c), which states in relevant part (emphasis added):

Except as provided in section 327(c), 327(e), or 1107(b) of this title, the court *may deny* allowance of compensation for services and reimbursement of expenses of a professional person employed under section 327 or 1103 of this title if, at any time during such professional person's employment under section 327 or 1103 of this title, such professional person is not a disinterested person. . . .

The appellees contend that the word "may" in this provision suggests that appointment of a professional person who is not "disinterested" is not flatly barred by Section 327(a). We reject this argument. Section 328(c) does not authorize the employment of a professional person who is not "disinterested." Instead, we interpret Section 328(c) to mean that if a non-"disinterested" professional person is improperly employed, or if a professional person ceases to be "disinterested" "at any time during such professional person's employment," the court may deny compensation and reimbursement. Consequently, we do not believe that Section 328(c) creates any ambiguity concerning the meaning of Section 327(a).

We similarly reject the argument that our decision in *In re BH & P* authorizes bankruptcy courts to take a "flexible approach" in determining whether a professional who is not "disinterested" under the statutory definition may nevertheless be employed pursuant to Section 327(a). In *In re BH & P*, we were required to interpret the phrase "actual conflict of interest" in Section 327(c). We found this phrase to be ambiguous and thus held that a bankruptcy court should have discretion "in determining whether an actual conflict exists 'in light of the particular facts of each case.'" *In re BH & P*, 949 F.2d at 1315 (citations omitted). In the current case, we must interpret and apply Section 327(a), not Section 327(c), and as we have explained, we find no ambiguity in the relevant language of Section 327(a).

■ Finally, the appellees, like the bankruptcy court and the district court, stress the practical benefits of employing Price Waterhouse in this case. As the Sixth Circuit has aptly observed, however, "bankruptcy courts cannot use equitable principles to disregard unambiguous statutory language." *In re Middleton Arms*, 934 F.2d at 725 (internal quotations and citations omitted). If it is thought that Section 327(a) should allow trustees and debtors in possession under some circumstances to employ professionals who are not "disinterested," an amendment of that provision should be sought from Congress.

For the reasons explained above, we hold that 11 U.S.C. § 327(a) prohibits the debtors in this case from employing Price Waterhouse. We therefore reverse the order of the district court.